OPINION.
{¶ 1} The plaintiff-appellant, the state of Ohio, appeals from the trial court's order overturning the administrative license suspension ("ALS") of the defendant-appellee, Christopher Wisby. The court found that there was no probable cause to support Wisby's arrest for driving under the influence. In its first assignment of error, the state argues that the earlier dismissal of the DUI charge for want of prosecution divested the court of jurisdiction to determine the issue of probable cause for purposes of the administrative license suspension. In its remaining assignments of error, the state argues that the finding of no probable cause was contrary to the manifest weight of the evidence adduced at an earlier suppression hearing, and that the court abused its discretion by reversing its earlier determination at the suppression hearing that there was probable cause. For the following reasons, we affirm.
 {¶ 2} Wisby was arrested on April 8, 2002, by Sergeant Charles Scales, a ten-year veteran of the Ohio State Highway Patrol. At two o'clock that morning, Scales was acting as part of a tactical squad of four troopers who were on "a DUI patrol" along Kellogg Road in Cincinnati, Ohio. He testified at the suppression hearing that he observed Wisby's vehicle, which was tracked by laser at a speed of 40 miles per hour, traveling less than a car's length behind the car ahead of his — in other words, following too closely or tailgating.
 {¶ 3} Scales pulled Wisby over. Scales testified that, although Wisby had just lit a fresh cigarette, he could smell about his person "a very heavy odor of alcoholic beverage." He also characterized Wisby's hand movements as "less than exact" and described his eyes as "glassy."
 {¶ 4} Scales testified that he ordered Wisby out of the car and onto a flat area on the roadside, away from traffic. Scales began taking Wisby through a series of field sobriety tests, beginning with the horizontal gaze and nystagmus test, which he performed on each of Wisby's eyes twice. He stated that Wisby displayed a lack of smooth pursuit with both eyes and a maximum deviation of 45 degrees — both of which he considered "clues" of intoxication. Scales stated that he then had Wisby perform two additional tests, which he described as "the one-leg stand" and the "walk-and-turn test." He stated that Wisby could only hold one foot in the air for about three seconds on the first attempt, and for twenty seconds on the second, and that he then dropped the foot "a couple of times" after that. He also described Wisby as sweating while he was performing the test. (According to the citations issued, Wisby was nineteen years old, six feet tall, and 160 pounds.) He testified that Wisby "spun around" on the walk-and-turn test, losing his balance, and that he also displayed a shaky step.
 {¶ 5} According to Scales, Wisby at first denied that he had been drinking at all — a statement that Scales did not believe given the strong odor of alcohol about his person. Eventually, Scales testified, Wisby admitted to drinking "an eighth of a beer" and then allowed for the possibility that he may have had up to three. Scales stated that Wisby's pronunciation was "a little thick-tongued," and that he spoke in an exceptionally loud voice.
 {¶ 6} Scales testified that Wisby refused a portable breath test (PBT). According to Scales, Wisby's attitude changed only after he was read his Miranda rights, at which point he, Wisby, asked to take the test. Although the test was administered, Scales testified that Wisby "appeared to directly thwart the test by not blowing directly into it." The test of what Scales described as "a very minimal sample of breath" produced a reading of .061. Scales stated that Wisby was given a second test, but that he again deliberately avoided blowing directly into the tube.
 {¶ 7} Although unable to achieve what he considered a reliable PBT reading, Scales testified that he was nonetheless convinced that Wisby had been driving while impaired based upon the walk-and-turn test. Scales therefore placed Wisby under arrest for DUI.
 {¶ 8} Wisby was then transported to the Batavia patrol post while his car was being towed. There he was read an ALS BMV form 2255 and asked to take a standard breathalyzer test. Wisby, Scales testified, refused. According to Scales, Wisby "arrogantly ignored" the written implied-consent form. Scales stated that he "spelled it out as clearly as I could what the consequences were," and that Wisby appeared to understand those consequences. He testified that Wisby again refused after requesting to use the bathroom.
 {¶ 9} Wisby was charged with violations of both R.C. 4911.34 (following too closely) and R.C. 4511.19(A) (driving under the influence). Pursuant to the filing of the DUI charge, Wisby was served with an administrative license suspension. On April 23, 2002, he filed an appeal of the ALS. On May 16, 2002, he entered not-guilty pleas to the charges and then subsequently, on July 1, 2002, filed several motions to suppress evidence resulting from the stop of his vehicle. The motions were based upon his argument that Scales had lacked probable cause to stop him for any traffic violation and that the trooper had failed to properly administer the field sobriety tests to assure their reliability.
 {¶ 10} The original hearing on the motion to suppress was set for August 21, 2002. On that date, Scales did not appear, apparently because he was on vacation. The hearing was reset for September 10, 2002, and went forward as scheduled. The state presented a videotape shot from Scales's cruiser, which showed the degree to which Wisby had been caught tailgating. Because of the camera angle, Wisby's performance of the field sobriety tests was not fully captured on the tape. The only witness to testify was Scales, whose testimony has already been described. Counsel for Wisby argued that there was insufficient evidence to support the charge that Wisby had been following the vehicle in front of him too closely. Counsel pointed to the fact that Wisby had been able to avoid colliding with the vehicle in front of him when that vehicle had slowed in reaction to the presence of the troopers' vehicles on the side of the road. He argued further that cross-examination had revealed that Scales had not complied with guidelines in the NHSTA manual for administering the field sobriety tests, thus negating their credibility. He also argued that the audio portion of the videotape showed that Wisby was not slurring his speech, nor, according to the visual component, was he stumbling around as suggested by Scales. At most, counsel argued, the evidence marginally showed a minor traffic violation and "a slight or moderate" odor of an alcoholic beverage, which counsel insisted was not sufficient to establish probable cause for a DUI violation. According to counsel, the arrest was part of an overly aggressive campaign targeting customers at a neighborhood bar.
 {¶ 11} On October 8, 2002, the trial court determined that Scales had not followed "the criterion" and therefore excluded evidence of the field sobriety tests. However, the trial court did not dismiss the DUI charge, ruling that Scales's personal observations provided sufficient evidence to go to trial on that charge. When Wisby's counsel raised the issue of the administrative license suspension, the trial court stated, "I'll do that later on. I'm not doing that today."
 {¶ 12} The case was set for trial on November 14, 2002. On that date, Scales was for the second time unavailable to testify. Reacting to his unexplained absence, the trial court dismissed the case for want of prosecution. Wisby's counsel immediately raised the issue of the administrative license suspension, asking the court "to reconsider its finding of probable cause here on the basis of what is in the transcript [of the suppression hearing] alone." Stating that it remembered the earlier hearing, the court granted the ALS appeal and made a specific finding that "there was no probable cause."
 {¶ 13} In its first assignment of error, the state argues that the trial court, once it dismissed the charges against Wisby for want of prosecution, lacked jurisdiction to reconsider the issue of whether probable cause existed for the DUI charge. As we have already noted, on October 8, 2002, the court had ruled that even without the evidence of the field sobriety tests — Scales's personal observations of Wisby's behavior, along with evidence that he was following too closely the vehicle in front of him, constituted probable cause for the DUI arrest.
 {¶ 14} Initially, we disagree with the state's assertion that the charges against Wisby were "dismissed over the state's objection." A review of the transcript of the November 14, 2002, hearing establishes that the prosecution, after requesting a continuance, did not say another word as the court dismissed the charges and granted the ALS appeal. The only person to speak was defense counsel. As observed by Wisby's counsel in his appellate brief, the prosecution "stood mute" after moving for a continuance and "never complained or objected to the proceeding * * * before, during, or after the exchange between the Court and defense counsel."
 {¶ 15} Further, we reject the state's premise that, once the charges were dismissed for want of prosecution, the trial court lacked jurisdiction to determine the ALS appeal. It is generally agreed that an ALS appeal, while perhaps best treated as ancillary to a criminal prosecution for purposes of judicial economy, is nonetheless a separate civil/administrative remedial matter unrelated to the criminal case in which the defendant is charged. This is true even though the present version of R.C. 4511.191 no longer requires the defendant to file a separate petition to initiate the appeal but instead requires only that the defendant challenge the administrative license suspension at the initial appearance in the criminal case. See State v. Rozell (1996), 4th Dist. No. 95CA17. The separate nature of the proceeding is evident on a number of grounds. First, the ALS appeal and the DUI charge are considered separate proceedings for the purpose of double jeopardy (provided that no vestige of the ALS remains after a DUI sentence). SeeState v. Gustafson (1996), 76 Ohio St.3d 425, 668 N.E.2d 435; State v.Bunker (Aug. 21, 1996), 1st Dist. Nos. C-950161 and C-950229; and Statev. Hetzer (Sept. 25, 1996), 1st Dist. No. C-960172. Second, the administrative license suspension is effective at the time of the arrest and thus operates independently of any penalties resulting from the criminal charge. Third, the theory behind the administrative license suspension is that it is served by the arresting officer acting as an agent of the Registrar of Motor Vehicles — in other words, in a capacity separate from that involving his duties as a law enforcement officer. Indeed, the prosecutor is also considered to be the representative of the Bureau of Motor Vehicles for purposes of an ALS appeal. See Painter, Ohio Driving Under the Influence Law (2003 Ed.), 8-4, fn. 87. Finally, the ALS appeal is governed by a separate standard of proof that is placed upon the defendant, not the government. Given all these indicia of separateness, the state's argument that the trial court had no independent jurisdiction over the ALS appeal is unpersuasive.
 {¶ 16} In its second, third, and fourth assignments of error, the state argues that the evidence presented at the "evidentiary hearing," by which it means the suppression hearing, was "sufficient" to establish probable cause and that the trial court's reversal of its earlier position on this issue for purposes of the ALS appeal was contrary to the manifest weight of the evidence and an abuse of discretion. We disagree.
 {¶ 17} Although never fully articulated, the state's argument in part is apparently that the trial court could not properly have reversed its earlier determination of probable cause following the suppression hearing. Leaving aside other evidentiary issues, we address first whether the parties were legally bound, or estopped, from relitigating the court's earlier determination of probable cause following the suppression hearing. In a scenario reversed from the one here, in which an ALS appeal preceded rather than followed the criminal proceeding, the Ohio Supreme Court held that the doctrine of estoppel, or issue preclusion, did not preclude the relitigation of issues. State v. Williams (1996),76 Ohio St.3d 290, 295, 667 N.E.2d 932. The court did conclude, however, that, at least in the case in which the ALS hearing preceded the criminal matter, all the technical requirements of issue preclusion existed: (1) actual litigation of the issue in the previous proceeding, (2) determination of the issue in the prior action by a valid and final judgment — denials of ALS appeals being final, appealable orders under R.C. 2505.02, and (3) privity of the parties. Id. at 295-297,667 N.E.2d 932. Still, because the application of issue preclusion would force the state to treat the informal procedure of an ALS hearing as, in essence, a mini-trial on the drunk-driving charge, the court ruled that exceptional circumstances weighed against the application of issue preclusion.
 {¶ 18} The present case, obviously, provides a different scenario, in which the criminal proceeding was resolved prior to the ALS hearing. The order of events is important, because the suppression hearing that resulted in the trial court's finding of probable cause, unlike an ALS hearing, did not result in a "valid and final judgment."Williams, supra, at 296, 667 N.E.2d 932. A finding of probable cause at a suppression hearing is not appealable by the defendant, and therefore the doctrine of collateral estoppel does not apply.
 {¶ 19} We conclude that there was no legal impediment to the trial court reaching a different result at the ALS hearing. Furthermore, as at least one other court has noted, collateral estoppel is not appropriate with respect to suppression hearings and ALS hearings because they do not share a common purpose or procedure. The purpose of the informal (and often short-notice) ALS hearing is to determine the appropriateness of an administrative act, whereas the purpose of the suppression hearing is to determine whether, under specific exclusionary principles, evidence should be allowed at trial. See State v. Roberts (May 4, 1995), 4th Dist. No. 94 CA 2020.
 {¶ 20} We turn, then, to the ultimate question: whether the trial court's determination that there was "no probable cause" for purposes of the administrative license suspension was contrary to the manifest weight of the evidence or otherwise an abuse of the trial court's discretion.
 {¶ 21} There is no argument that Wisby refused to submit to the chemical tests requested by Scales. Nor did Wisby ever make an issue of whether he was properly instructed upon, or properly understood, the instructions given to him regarding the requirement of the testing. Thus, the only issue for purposes of the administrative license suspension was whether Scales had "reasonable ground to believe" that Wisby was operating a vehicle either while under the influence of alcohol or with a prohibited concentration of alcohol in his blood. R.C. 4511.19.1
 {¶ 22} The state argues that Scales's testimony was sufficient, as the trial court originally found following the suppression hearing, to establish "probable cause" or "reasonable ground to believe" that Wisby was driving under the influence or with an illegal blood-alcohol content. We agree with the state that there was sufficient evidence to establish probable cause, but we disagree that such evidence was so firm that the trial court could have only come to one conclusion on the matter. There were, as we have noted, deficiencies in Scales's testimony with respect to the legitimacy of the field sobriety tests (which the trial court held to be invalid and inadmissible), as well as the severity of the traffic violation that led to the initial stop. (Although Wisby was driving too close on the videotape, there was a suggestion upon cross-examination that such proximity was due to the sudden slowing down of other vehicles in reaction to the presence of Scales's marked car.) There was also testimony from which the trial court could have concluded that the stop was largely pretextual as part of the state troopers' "DUI patrol."
 {¶ 23} Also, it cannot be overlooked that, at the time of the eventual ALS hearing, Scales had failed to appear at two court hearings, thus prompting the court to lose patience and to dismiss the charges for want of prosecution. It was quite possible that Scales's failure to appear severely detracted from his credibility with the court. We cannot say that it would have been improper for the court to take his absence into consideration when reweighing the credibility of his earlier testimony for purposes of the administrative license suspension. As noted, the primary purpose of the ALS hearing is to determine whether the alleged offender's driver's license should be restored, as opposed to the purpose of a suppression hearing, which is merely to determine whether the prosecution can present certain evidence. Apparently the trial court in this case was not willing to give the same credence to the state's case against Wisby for purposes of the administrative license suspension after the state had failed to follow through on the criminal and traffic charges. We cannot say that the court's attitude in this regard was arbitrary, irrational, or unreasonable, and thus we cannot conclude that the court abused its discretion in altering its previous perception of the evidence.
 {¶ 24} It is well settled that issues of credibility are largely within the trial court's domain. Having concluded that its earlier determination of probable cause was not binding with respect to the ALS hearing, we cannot say that the trial court's finding of a lack of reasonable grounds for the stop that led to Wisby's DUI arrest was either contrary to law, against the manifest weight of the evidence, or an abuse of the court's discretion. The state's second, third, and fourth assignments of error are, therefore, overruled.
 {¶ 25} Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
SUNDERMANN, P.J., and WINKLER, J., concur.