RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MICHAEL BRADLEY,

        *Plaintiff-Appellant,*

    v.

JACK M. RENO, JR., TIMOTHY S. DOBBINS, TIMOTHY
J. TIMBERLAKE, JOHN DOE #1, and JOHN DOE #2,

        *Defendants-Appellees.*

No. 13-3983

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown
No. 4:12-cv-00890—Benita Y. Pearson, District Judge.

Argued: March 12, 2014

Decided and Filed: April 18, 2014

Before: MERRITT, SUTTON and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael J. McGee, HARRINGTON, HOPPE & MITCHELL, LTD., Warren, Ohio,
for Appellant. Morgan A. Linn, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus,
Ohio, for Appellees. **ON BRIEF:** Michael J. McGee, HARRINGTON, HOPPE &
MITCHELL, LTD., Warren, Ohio, for Appellant. Morgan A. Linn, Keith O'Korn, OFFICE OF
THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

**OPINION**

_____

SUTTON, Circuit Judge. An Ohio court found probable cause that Michael Bradley was
driving while intoxicated. Yet a jury acquitted him on the charge, after which Bradley sued the
arresting officer in federal court under § 1983 for arresting him without probable cause. Does
the trial court's probable-cause finding trigger issue preclusion—the rule that a party who

1

litigates and loses an issue in one case may not re-litigate it again in another—even though the acquittal insulated the finding from appeal?  No, we hold.

I.

Around 10:30 pm on April 24, 2011, as Ohio State Trooper Jack Reno patrolled a stretch of highway in Austintown, Ohio, he noticed a green tractor-trailer stopped on the shoulder of the ramp connecting Route 46 to Interstate 80.  Worried that the driver might be stranded or injured and concerned that the truck posed a safety hazard, Reno stopped to talk to the driver.  As he approached the driver-side door, Reno noticed that the truck's engine was running and that no one appeared to be in the cab.  Reno knocked on the truck door several times and, after a few minutes, Bradley emerged from behind a curtain separating the sleeper area of the cab.

Reno soon suspected that alcohol, not a vehicle breakdown, had stranded Bradley alongside the highway.  As he spoke to Bradley, Reno noticed several signs of intoxication. Bradley's breath smelled of alcohol, his eyes appeared red and glassy, and his speech was slurred.  When asked, Bradley admitted that he had consumed a "couple" "small pitchers" of beer and a "couple" bottles of beer an hour or two earlier at a truck stop fifteen miles away.  R. 14-2 at 45.  Bradley told Reno that he had parked on the shoulder of the road to get some sleep, but he could not explain why he had stopped on the ramp rather than at a rest stop 200–300 feet down the road.

Bradley failed two field sobriety tests and showed other signs of intoxication, including swaying, losing his balance and failing to follow basic instructions.  Reno arrested Bradley for driving while drunk.  A breathalyzer test at the local Highway Patrol office confirmed that Bradley's blood-alcohol content (.111%) exceeded the legal limit for commercial drivers in Ohio (.04%).  *See* Ohio Rev. Code § 4506.15(A)(2).

The State charged Bradley with drunk driving.  Bradley filed a motion to suppress the results of his breathalyzer test, arguing that Reno lacked probable cause to arrest him.  The state court held a hearing, giving Bradley the opportunity to question Reno and to introduce any other evidence he wished to present.  After listening to the evidence, the state court found that Reno

had probable cause to arrest Bradley for violating Ohio's drunk-driving law.  The case proceeded to trial, and a jury acquitted Bradley on the charge.

Invoking § 1983, Bradley sued Reno and other officers involved in his arrest.  He alleged that the officers violated his Fourth (and Fourteenth) Amendment rights by arresting him without probable cause.  The district court awarded the defendants summary judgment.  It concluded that the state court's ruling precluded Bradley from litigating probable cause anew.

## II.

Bradley, all agree, had no right to appeal the state court's probable cause ruling.  Like many other States, Ohio does not give a criminal defendant the right to seek interlocutory review of a suppression ruling.  *See State v. Crawley*, 644 N.E.2d 724, 728 (Ohio Ct. App. 1994).  That means that, when the Ohio jury acquitted him of drunk driving, the chance to appeal the probable cause finding vanished.  Freed of the risk of guilt, Bradley no longer had any stake in his suppression motion.  *See State v. Pugh*, 2012 Ohio 829 (Ohio Ct. App.).

Does issue preclusion insulate the trial court's unreviewed and unreviewable finding? The answer depends on Ohio law.  Under an act passed by the first Congress and still in effect today, the preclusive effect of a state court's judgment turns on the law of that State.  28 U.S.C. § 1738.  The Supreme Court of Ohio has not yet told us what it thinks on this score, but several guideposts inform the inquiry.  For reasons hinted at above and elaborated below, an acquitted Ohio defendant's inability to test a probable-cause finding in an appellate court drains the finding of preclusive effect.

The officer's invocation of issue preclusion, to start, contradicts a cardinal rule of the law of judgments.  An unappealable order, generally speaking, does not bind later efforts to resolve the issue, a rule that bears the stamp of the National Supreme Court, the Restatement of Judgments and the leading treatises.  *See, e.g., Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006); *Restatement (Second) of Judgments* § 28 (1982); 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4433 (2d ed. 2013).

Nor would the use of issue preclusion in this instance operate around the edges of this blackletter rule.  It would attack the rule's heartland.  The paradigm of non-preclusion occurs

when the first case becomes moot pending appeal through no fault of the parties.  *See In re Smith*, 964 F.2d 636, 637 (7th Cir. 1992); *Federal Practice & Procedure* § 4433.  That's what we have here.  After his acquittal, Bradley's motion to exclude evidence no longer mattered.  It became moot in every relevant way.

A core function of issue preclusion also suggests that, in the absence of a chance to appeal, the rule should not apply.  The rule tells a second court not to take a second crack at a question in part because we have confidence that the first court reached the correct answer. When the check of appellate review goes away, however, so does some of our assurance that the first court got it right.  That is not because appellate judges are special; it is because an appeal permits at least two *more* judges, and occasionally many more judges, to review the issue.  There is safety in numbers.  The point grows stronger in the setting of probable-cause rulings made unreviewable by acquittals.  An acquittal of course does not refute an earlier finding of probable cause; proof beyond a reasonable doubt demands more of the prosecution than probable cause does.  But an acquittal at least blunts some confidence in it.

Another consideration reinforces the point.  A system that gives unappealable trial court rulings preclusive effect treats acquitted defendants worse than convicted ones.  The convict would get at least one shot at undoing the probable cause finding (on appeal from the conviction), and if he succeeds his § 1983 lawsuit could proceed.  But an acquitted defendant would get no shot, and his § 1983 lawsuit could never proceed.  Courts should avoid such anomalies when they can.

None of this means to detract from the task at hand—to predict which rule the Ohio courts would think is best, not to decide which rule we think is best.  But in this instance the two overlap.  All indicators suggest that Ohio's courts would agree with § 28 of the Restatement of Judgments, which says:  no appeal, no preclusion.  The State's courts have often looked to the Restatement when solving new problems in the law of judgments. *See, e.g.*, *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995); *Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 689 (Ohio Ct. App. 2013).  Better yet, the State Supreme Court has described § 28 as a catalog of "recognized exceptions to the general rule of issue preclusion," relying on it when carving out other enclaves from preclusion's domain.   *State v. Williams*, 667 N.E.2d 932, 936–37 (Ohio

1996).   Why would state judges who have consulted the Restatement when answering related questions strike out on their own when answering today's question?

*State v. Wisby* fortifies these conclusions, even if (as an unpublished decision of an intermediate court) it cannot put them beyond doubt.  2003 Ohio 5834 (Ohio Ct. App.).  A court found probable cause that the defendant drank and drove in violation of Ohio law but later dismissed the charges against him.  *Id.* at *2–3.  After the dismissal, the Ohio Court of Appeals ruled that the trial court could take a fresh look at probable cause when deciding whether to end the suspension of the defendant's license.  "A finding of probable cause at a suppression hearing is not appealable by the defendant," the appellate court explained, so "the doctrine of collateral estoppel does not apply."  *Id.* at *4.

Nothing in the common law of preclusion by the way requires a different result.  True, the principle that only appealable rulings are eligible for issue preclusion does not hold sway in all places at all times.  To take one example, issue preclusion shields decisions the Supreme Court reaches under its original jurisdiction, even though the loser has nowhere to turn for further review.  *See Arizona v. California*, 460 U.S. 605, 623–24 (1983).  To take another, issue preclusion sometimes shields decisions made by a trial court even if the amount in controversy falls short of what appellate jurisdiction takes.  *See Johnson Steel Street Rail Co. v. William Wharton, Jr., & Co.*, 152 U.S. 252 (1894).  But these and other exceptions for the most part follow a pattern, and the pattern does not cover this case.  The exceptions cover only situations in which the lawmakers have prohibited appeals across the board in a class of cases.  The no-preclusion rule, by contrast, stays in effect when circumstances frustrate an otherwise available appeal.

This distinction makes sense.  In the first group of cases, the unavailability of appeal likely reflects the lawmakers' confidence in the court's rulings and in safeguards that take the place of appellate review.  But in the second group of cases, the unavailability of appeal turns on chance and chance alone.  This case fits into the second group—the group governed by the rule rather than by the exceptions.  Ohio does not give trial courts the last word on probable cause.  If the trial court grants a motion to suppress evidence, the prosecution may appeal its decision at once.  *See* Ohio Rev. Code § 2945.67.  And if the trial court denies the motion, the defense may

appeal its decision at the end of the case.  *See, e.g., City of Xenia v. Wallace*, 524 N.E.2d 889, 892 (Ohio 1988).  Only happenstance—the acquittal—prevented Bradley from exercising that right here.

Nor does § 1983 or its attendant doctrine, qualified immunity, change things.  From a claimant's perspective, one might have thought that § 1983's purpose—protecting citizens from violations of their federal rights by state officials—would lead to the conclusion that state judgments *never* preclude lawsuits under § 1983.  Not so, as *Allen v. McCurry* tells us.  449 U.S. 90 (1980).  "[N]othing in the language of § 1983," the Court explained, "remotely expresses any congressional intent to contravene the common-law rules of preclusion."  *Id.* at 97.  From a police officer's perspective, one might have thought that a function of qualified immunity—protecting public officials from unfair second guessing of their decisions—would make issue preclusion *always* applicable, even when the claimant had no route to appeal the trial court's decision.  That too is not so because "the common-law rules of preclusion" apply no less in this setting than in the other.  Just as the purpose of § 1983 (protecting federal rights) does not justify shrinking preclusion, so the purpose of qualified immunity (protecting public officials) does not justify stretching it.

Public officials at any rate do not need issue preclusion to protect themselves from vexing lawsuits.  Thanks to qualified immunity, any officer who behaves reasonably—even if, in hindsight, illegally—has nothing to fear from a lawsuit under § 1983.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  And in gauging the reasonableness of an officer's acts, a federal court should of course consider what a state trial court thought of them.  A state judge's finding of probable cause suggests, even if it does not prove, that the officer behaved reasonably in thinking he had probable cause.  *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1250 (2012); *Kovacic v. Cuyahoga County Dept. of Children & Family Servs.*, 724 F.3d 687, 709–10 (6th Cir. 2013) (Sutton, J., dissenting).

Nor do our precedents demand the opposite result.  It is true that one of our unpublished opinions, applying Ohio law, gives preclusive effect to an unappealable finding made before a criminal trial.  *See Prokos v. City of Athens*, 118 F. App'x 921, 926–27 (6th Cir. 2004).  And a line of our published opinions, applying the laws of other States, has done the same.  *See Smith v.*

*Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (Tennessee); *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) (Michigan), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001). But these decisions do not bind us—*Prokos* because we did not publish it, the other decisions because Ohio is not Michigan or Tennessee. Nor do these decisions convince. They do not explain why courts should recognize a § 1983/probable cause exception to the norm that unappealable rulings are not eligible for issue preclusion. They do not indeed acknowledge the norm at all. More persuasive are the opinions from other courts concluding that when an acquittal prevents a criminal defendant from appealing a ruling, the ruling has no preclusive force. *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 91–92 (2d Cir. 2007) (New York) ("[T]he danger inherent in the doctrine of collateral estoppel—that an erroneous first decision on an issue will be perpetuated in subsequent litigation—is remedied by the requirement that the doctrine not be applied when there is no opportunity for appellate review. . . . This principle is of substantial import in the context of a criminal proceeding ultimately dismissed."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1020–23 (7th Cir. 2006) (Illinois) ("[T]he unavailability of an appeal is determinative . . . Collateral estoppel therefore cannot bar relitigation of the voluntariness of [the plaintiff's] confession."); *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991) (Colorado) ("[The] requirements [of issue preclusion] have not been met. . . . [The plaintiffs] did not have an opportunity to appeal the court's ruling on their motion to suppress. Before a final judgment, such an interlocutory appeal would have been improper, and after the judgment ([the plaintiffs] were acquitted), an appeal was rendered moot."); *Sena v. Commonwealth*, 629 N.E.2d 986, 992 (Mass. 1994) ("[T]here was no avenue for review of the criminal court ruling on the plaintiffs' motion to dismiss for lack of probable cause. . . . Thus, the issue of the existence of probable cause to support the plaintiffs' arrest is not precluded . . . .").

Issue preclusion does not get Reno out of this lawsuit. We need not decide whether probable cause supported Bradley's arrest or whether Reno otherwise enjoys qualified immunity. Reno's motion for summary judgment did not raise these issues, the district court's opinion did not rest on them, and Reno's appellate brief concedes that they are not before us. We think it best for the district court to take the first look at these defenses.

For these reasons, we vacate and remand.