NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0516n.06

Nos. 14-1433/1435/1436

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| In re: ROBERT L. SCHWARTZ, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| PAMELA LIGGETT, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT L. SCHWARTZ, | ) |
| | ) |
| Appellee. | ) |
| | ) |

**FILED**
Jul 21, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

BEFORE: GIBBONS and COOK, Circuit Judges; GWIN, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Pamela Liggett filed a proof of claim in the bankruptcy case of her ex-husband, Robert Schwartz. She sought payment for the proceeds of an IRA that she claims Schwartz wrongfully converted after their divorce. Though the bankruptcy court allowed a significant amount of her claim, it repeatedly denied her treble damages and attorney's fees, as well as some other amounts. That decision gives rise to most of the issues in this appeal, and we now affirm as to the amount of Liggett's claim. However, we order the parties to file further briefing on the confirmation of Schwartz's plan.

_____

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

In late 2000, Robert Schwartz and Pamela Liggett received a judgment of divorce from the Circuit Court in Oakland County, Michigan. The judgment contained the following provision:

<u>PROPERTY SETTLEMENT</u>

. . . .

IT IS FURTHER ORDERED AND ADJUDGED that any IRA [Individual Retirement Account] or 401K Plans shall be divided equally by and between the parties by way of a Qualified Domestic Relations Order (QDRO) if necessary. . . . In the event there are any gains or losses on any of these accounts from date of entry of the Judgment until such time as the accounts are transferred, said gains or losses shall be equally split between the parties, as well.

Through this process, Schwartz transferred one-half interests in at least five accounts to Liggett in 2003. But there was one more pre-divorce IRA managed by a company called Independence One. For some reason, Schwartz failed to transfer an interest in this IRA to Liggett, perhaps because the custodian for the account merged with another entity in 2001. As a result of this merger, the Independence One account became a new account with a company called Wealth Management Securities Services.[1] Schwartz received statements from these companies on the value of the account until 2009, when he liquidated it. He likely used the proceeds of the account to pay tax obligations. Liggett discovered the past existence of this IRA in early 2010 and demanded that Schwartz transfer the proceeds. Schwartz, however, claimed ignorance of the account, positing that he thought it had been rolled into one of the previously transferred IRAs. Liggett then moved the Circuit Court to order Schwartz to transfer an interest in the proceeds, and that court ordered the transfer.

---

[1] Before liquidation, the IRA was rolled over at least one more time into an account with UBS.

Schwartz filed a voluntary petition for Chapter 13 bankruptcy in October of 2010. His petition listed Liggett as an unsecured creditor via a domestic support obligation but did not state an amount. Liggett promptly filed a claim for a half-interest in the Independence One IRA, as valued at the time of divorce, together with other claims. Liggett later amended this claim to state a much higher amount owed and to state that the claim was grounded in "divorce/conversion." Schwartz conceded that he owed Liggett a debt arising out of the divorce judgment and that the debt would not be discharged, but he objected that the amount was far too high and that the court should only allow her claim as initially filed. Liggett, meanwhile, objected to Schwartz's Chapter 13 plan because his unsecured debt exceeded statutory limits.

Concurrent to the Chapter 13 case, Liggett filed a verified motion for sanctions in the Oakland County Circuit Court[2] for Schwartz's failure to transfer an interest in the Independence One IRA, seeking attorney's fees and sanctions under Mich. Comp. Laws. § 600.2591.[3] At a hearing before the circuit court, Liggett argued that Schwartz had intentionally misrepresented his knowledge of the IRA. But the court disagreed and thought it more likely that Schwartz had simply forgotten the last of several assets to be transferred. The circuit court entered an order denying Liggett's motion for sanctions.

Back in bankruptcy court, the judge held a hearing on both Schwartz's objection to Liggett's claim and Liggett's objection to Schwartz's plan. The judge ruled that confirmation was proper under Chapter 13 but deferred deciding the amount of the claim. The judge put off the latter decision partly because Liggett had initiated an adversary proceeding for a judgment of

---

[2] The bankruptcy court granted Liggett relief from the automatic stay to return to the state court.

[3] That statute provides for recovery of "costs and fees" whenever the state court "finds that a civil action or defense to a civil action was frivolous[.]" Mich. Comp. Laws § 600.2591(1).

non-dischargeability under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(5).[4] She alleged in each count that Schwartz had committed statutory and common law conversion by failing to transfer an interest in the IRA; she therefore sought a judgment for an amount including "treble damages plus reasonable costs and attorney['s] fees[,]" presumably under Michigan's conversion statute, Mich. Comp. Laws. § 600.2919a. In response, Schwartz filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, and he attached extensive exhibits. He argued in part that the Oakland County circuit court's ruling on the motion for sanctions collaterally estopped Liggett from asserting misrepresentation theories relevant to 11 U.S.C. § 523. Liggett responded to the motion, attaching her own exhibits.

The bankruptcy court ruled in favor of Schwartz in a lengthy ruling from the bench, rejecting each of Liggett's applications of 11 U.S.C. § 523. The bankruptcy court granted summary judgment to Schwartz as to Liggett's counts under 11 U.S.C. §523(a)(4) and § 523(a)(5) and granted Schwartz's motion to dismiss the count under 11 U.S.C. § 523(a)(2)(A). The court first noted that Schwartz had already conceded a non-dischargeable debt to Liggett in the claims objection process; thus the real dispute in the adversary proceeding was the amount of that debt. The bankruptcy court rejected Liggett's count under § 523(a)(4) because she had no "support [for her] argument that the divorce judgment created anything other than a contractual obligation between the parties." Without something beyond a contractual obligation, Liggett had failed to raise a genuine dispute of a fiduciary duty, embezzlement, or larceny under § 523(a)(4). Similarly, the court concluded that Liggett had not raised an inference that she held something more than a contractual claim under § 523(a)(5), which exempts only "domestic support obligation[s]." Here the court elaborated that "the IRA obligation in this case is in the nature of

---

[4] In brief, these provisions exempt from discharge any debts owed for property or services obtained by fraud or false pretenses, 11 U.S.C. §523(a)(2), "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" *id.* § 523(a)(4), and "for a domestic support obligation," *id.* § 523(a)(5).

a property settlement, based on the plain reading of the [divorce] judgment," especially noting that the relevant section was "entitled 'Property Settlement' without any qualifying conditions." Finally, the court held that Liggett failed to allege the material misrepresentation and reliance required for § 523(a)(2).

But even though the bankruptcy court dismissed Liggett's non-dischargeability allegations, it recognized that she was "entitled to the value of the subject IRA on the date her share of the IRA is transferred to her. Because the subject IRA has been commingled with [Schwartz]'s share of other IRA[s], it is difficult to ascertain the value of the subject IRA as of today's date." As a result, the court asked for Schwartz to submit materials on his movement of the funds, which the court planned to discuss at a hearing on the claims objection in a few days. At that hearing, the court ruled in favor of Schwartz on the claims objection, explicitly rejecting any theory of conversion or entitlement to treble damages and fees. It reaffirmed its view that Schwartz had nothing but a contractual obligation to transfer the IRA proceeds to Liggett; since Liggett never had an ownership or other property interest in the proceeds, Schwartz could not have converted the funds.

Yet even this ruling did not fully resolve the amount that Schwartz concededly owed Liggett, so the court also asked the parties to brief the appropriate rate of return Liggett would have received on the proceeds otherwise liquidated in 2009. They did so, reaching largely similar outcomes but diverging in methodology; Liggett included reinvestment of fund dividends in her total while Schwartz did not. The court issued an opinion in favor of Schwartz's estimate (roughly $60,000). Separately, the court confirmed the Chapter 13 plan over Liggett's objection. Liggett appealed to the district court.

Before the district court, Liggett argued that the plan should not have been confirmed and that the bankruptcy court improperly determined the amount of her claim. The district court accepted her argument that Schwartz's plan violated Chapter 13's limits on unsecured debt and vacated the confirmation order. But because the district court found Schwartz unable to proceed under Chapter 13, it held Liggett's other appeals from those proceedings, including that on the amount of her claim, to be moot and dismissed them without ruling on the merits.

Upon remand, Schwartz filed a motion to convert his case to Chapter 11, which the bankruptcy court granted. Schwartz's Chapter 11 plan proposed to treat Liggett as a "[n]on-dischargeable, unsecured[,]" and unimpaired creditor with a claim arising out of her half-interest in the IRA proceeds. To make her whole, Liggett would receive periodic cash payments over five years totaling approximately $60,000. Liggett responded by filing a new proof of claim in an even higher amount (over $460,000) for "divorce settlement/[b]reach of fiduciary duty/conversion[.]" She attributed most of this amount to "[t]reble [a]ctual [d]amages pursuant to [s]tate [l]aw." On the same day Liggett initiated another adversary proceeding to determine dischargeability under 11 U.S.C. § 523. As in the Chapter 13 adversary proceedings, Liggett's complaint alleged that Schwartz had converted her interest in the IRA, but this time she pled causes of action under § 523(a)(4), § 523(a)(6), and § 523(a)(15). To her complaint she attached several exhibits, including images of webpages from the IRA account and her own spreadsheets that purported to show the amount of actual damages. Yet again, Schwartz moved for dismissal for failure to state a claim or, alternatively, summary judgment. Notably, Schwartz conceded that Liggett's claim was non-dischargeable under § 523(a)(15), which applies to debts owed to former spouses pursuant to divorce decrees, but asserted that the court's ruling in the Chapter 13 adversary proceeding precluded any attempt to prove a higher amount under § 523(a)(4) and

§ 523(a)(6). The court accepted Schwartz's preclusion arguments for those subsections, granted his motion with respect to Liggett's conversion claims pled under the same subsections, and, since Schwartz conceded the applicability of § 523(a)(15), ultimately ruled that Liggett held a non-dischargeable claim in an amount just over $60,000.

Outside the adversary proceeding, Schwartz filed an objection to the amount of Liggett's claim, arguing that the bankruptcy court's previous orders had already established that treble damages and fees were unwarranted. At a hearing on the amount of the claim, the court reaffirmed its denial of treble damages and attorney's fees. And, as in the Chapter 13 proceedings, the court asked the parties to brief the appropriate rate of return that Liggett would have enjoyed on the assets in the account. After Schwartz submitted his brief, Liggett responded with her own estimate that adopted most of Schwartz's methodology but, like the prior proceedings, argued for a few thousand dollars more based on the reinvestment of dividends from mutual fund holdings. In the final order settling the amount of the claim (what the parties refer to as the "Claims Order"), the court favored Schwartz's calculation of the claim. The court based its decision on *res judicata* principles, believing that its earlier orders in the Chapter 13 proceedings barred reassertion of Liggett's arguments. This order allowed Liggett an amount equal to $61,931.36. Finally, despite objections from Liggett that the Chapter 11 plan did not provide her with the full, present value of her claim, the bankruptcy court confirmed the plan. It also denied Liggett's motion for reconsideration.

Liggett appealed the confirmation of the plan, the Claims Order denying treble damages, and the dismissal of her second adversary proceeding to the district court. That court affirmed on all issues. Although the district court did not think *res judicata* applicable to the case, it

agreed entirely with the bankruptcy court on the merits. Liggett now asks this court to review all three issues, which we will do in reverse order.

## II.

"On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district court." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 411 (6th Cir. 2013). Looking first to Liggett's appeal of the Claims Order denying treble damages, we think this argument is perhaps better taken as an appeal of the Chapter 11 adversary proceeding,[5] and we treat it as such. We evaluate Schwartz's motion in the adversary proceeding under the standards set out in the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7008, 7012, 7056. We review *de novo* a dismissal under either Rule 12 or Rule 56. *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997).

Since Liggett could not secure review of the merits of her conversion claims on appeal to the district court, we are skeptical that Liggett was precluded from reasserting those claims in the Chapter 11 case. *See Feiger v. Corrigan*, 602 F.3d 775, 777 n.3, 777–78 (6th Cir. 2010) (finding no final judgment on the merits where the appeal was dismissed on mootness grounds); *see also* 18A Charles A. Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 4433 (2d ed. supp. 2013). It would be an anomalous result to deny Liggett effective appellate review of a critical order, here because of Schwartz's error in filing under the wrong chapter, and to preclude

---

[5] The bankruptcy court was not entirely clear on its intent to resolve the conversion claim as a contested matter or as an adversary proceeding, but since the latter forum offers more procedural protections to Liggett, *see, e.g.*, *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762–63 (5th Cir. 1995), we view it through that lens out of an abundance of caution. Liggett's complaint in the adversary proceeding pled conversion as a means of satisfying § 523, and it unambiguously injected the issues of her interest in the IRA, the amount of her claim, and treble damages into the proceeding—as well as asking the court to enter a money judgment reflecting a favorable determination on those issues—so the court could have decided those issues as part of its judgment on non-dischargeability. *See Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 853–54 (6th Cir. 1993).

her ability to relitigate that order in the bankruptcy court. *Cf. Bradley v. Reno*, 749 F.3d 553, 556 (6th Cir. 2014) ("The paradigm of non-preclusion occurs when the first case becomes moot pending appeal through no fault of the parties.").

But even if Liggett can avoid *res judicata*, we conclude that Schwartz deserved summary judgment on her claims under § 523 asserting conversion of the IRA proceeds—which present the heart of the dispute in the adversary proceeding as the sole means for Liggett to prove her entitlement to treble damages and attorney's fees. Schwartz's motion clearly apprised Liggett that he sought summary judgment in the alternative to dismissal for failure to state a claim, and she responded to that motion with her own exhibits and without asking the court to stay the motion pending further discovery. Summary judgment is appropriate if the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). After Schwartz moved for summary judgment on Liggett's conversion-based claims, she had the burden to produce evidence supporting each element of her claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Under Michigan law, civil "conversion is defined as any distinct act of domain wrongfully exerted *over another's personal property* in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992) (emphasis added). We emphasize the necessity of a property interest to distinguish it from a contractual obligation, which will not support a conversion claim by itself. *See, e.g.*, *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 788–89 (E.D. Mich. 2014); *Lawsuit Fin., L.L.C. v. Curry*, 683 N.W.2d 233, 240–41 (Mich. Ct. App. 2004) (per curiam). But "[w]here a judgment of divorce is entered pursuant to an agreement of the parties, the agreement is a contract[.]" *Thornton v. Thornton*, 746 N.W.2d 627, 629 (Mich. Ct. App. 2007) (per curiam); *see also*

*MacInnes v. MacInnes*, 677 N.W.2d 889, 891 (Mich. Ct. App. 2004) ("A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract.").

Here, the sole record evidence on the nature of Liggett's interest in the IRA is the text of the divorce judgment itself. As quoted above, the relevant section is entitled "property settlement[,]" which plainly suggests a consensual award of property. That means one inference adverse to her conversion claim (that it is in fact just a contractual claim) versus no inferences in Liggett's favor, her assertions to the contrary at oral argument notwithstanding. And even if this court ignored that inference, Liggett would still be unable to point to anything in the record establishing a non-consensual award of property. Again, she had the burden to set forth specific facts showing a genuine dispute of fact on that point. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Consequently, her attempt to prove a non-dischargeable debt under § 523(a)(4) or § 523(a)(6)—and in an amount more than three times the actual damages allowed by the bankruptcy court—must fail.

Nonetheless, and as Schwartz conceded and the bankruptcy and district courts recognized, Liggett still holds a claim for her actual (but not treble) damages that is non-dischargeable under § 523(a)(15). We turn next to her challenge to that amount in the claims objection process.

**III.**

As a finding of fact outside the adversary proceeding, the bankruptcy court's determination of the amount of Liggett's claim is reviewed for clear error. *See In re McKenzie*, 716 F.3d at 411. The final Claims Order in the Chapter 11 case fixed Liggett's claim in the amount of $61,931.36 as valued on December 5, 2012. But Liggett had sought $64,305.20 for her actual damages. Though she agreed with Schwartz on the price of each mutual fund share in

the IRA at the time of valuation, she justified her higher total as more accurately reflecting the number of shares in the account; had Schwartz not liquidated the account in 2009, she claimed, the number of shares would have grown through reinvestment of dividends. The bankruptcy court thought this argument precluded by its order in the Chapter 13 case, but for reasons similar to those above we find this application of *res judicata* specious.[6] So we address the substance of Liggett's argument.

Liggett's argument is plausible as a matter of theory, but the parts of the record to which she points us do not show the bankruptcy court's final amount to be clearly erroneous. At most, Liggett has identified dividends paid out and apparently reinvested years before Schwartz liquidated the IRA. But these dividends were already included in the undisputed amount allowed by the bankruptcy court. And the fact that some mutual funds issued dividends before 2009 does not tell us whether dividends were issued on similar shares thereafter. Nor would we know the precise amount of any such dividends, when they issued, or how many shares they would buy when reinvested. We therefore cannot determine what additional amount, if any, Liggett should have been awarded, and we therefore cannot say that the bankruptcy court clearly erred in its final Claims Order.

## IV.

We turn finally to Liggett's appeal from the Chapter 11 confirmation order. The Chapter 11 plan treated Liggett as an unimpaired creditor deemed to accept the plan and entitled to

---

[6] We also note more reasons not to apply claim preclusion outside the adversary proceedings. Although plan confirmation can have the same preclusive effect as a final judgment, *see, e.g.*, *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991), the district court vacated the order confirming Schwartz's Chapter 13 plan after Liggett's first appeal. *See Liggett v. Schwartz (In re Schwartz)*, Nos. 11-13160, 11-13161, 2012 WL 1020011 at *6 (E.D. Mich. Mar. 16, 2012). As a result, "the order from which the appeal is taken[,]" here the Chapter 13 order fixing the amount of Liggett's claim, "is for all practical purposes a final order entered in the same proceeding" as the later Claims Order under Chapter 11. *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010).

receive monthly installment payments up to the value of her claim, without interest. The plan also enjoined all claim holders from taking their own actions to collect against Schwartz. Liggett now argues that the bankruptcy court improperly confirmed the plan over her objections because her claim was impaired. Consequently, she claims, she should not have been deemed to accept the plan and should have received the full present value of her claim, including interest. She also argues that the injunction against collection was improper.

We can first dispose of her appeal from the injunction. As Liggett candidly concedes, she did not raise the injunction issue before confirmation of the Chapter 11 plan. Typically, this oversight forfeits the ability to argue the issue on appeal. *See, e.g.*, *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1318 (4th Cir. 1996). Liggett points to three cases that she believes create an exception to this forfeiture rule. However, those cases stressed the need to resolve the issue on appeal to prevent the parties from litigating the matter again before the trial court and thereby impair judicial economy. *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006); *accord Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 420 (6th Cir. 2008). No such benefit to the court would accrue from resolving the issue here. Liggett in fact seeks to reopen the bankruptcy proceedings through her injunction argument. We therefore consider that argument forfeited.

We next assess whether the plan impaired Liggett's claim in some way beyond the injunction, and we review this question of law *de novo*. *See L&J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L&J Anaheim Assocs.)*, 995 F.2d 940, 942 (9th Cir. 1993). A Chapter 11 plan must identify any claims it will impair. *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 736 (6th Cir. 2014) (citing 11 U.S.C. § 1123(a)(3)). The Bankruptcy Code treats a claim as

impaired unless the debtor's plan "leaves unaltered the legal, equitable, and contractual rights" of the creditor. 11 U.S.C. § 1124(1). Any impaired creditor can vote against a plan and thereby preclude confirmation. *Ice House*, 751 F.3d at 737 (citing 11 U.S.C. § 1129(a)(8)).

Contrary to the conclusion of the bankruptcy court, we see Liggett's claim as impaired. As Schwartz acknowledged at oral argument, the Chapter 11 plan paid Liggett the face value of her claim, but—as best we understand it from the parties—it only *required* that Schwartz pay that value over five years (and without any compensation for the time value of the delay). Since we have already affirmed the bankruptcy court's treatment of Liggett's claim as based in contract, the best interpretation of that contract is that Schwartz owed the full amount of Liggett's interest in the IRA as soon as the state court entered an order to that effect. This sort of "delay in payment of a claim beyond its contractual maturity date results in impairment." 7-1124 *Collier on Bankruptcy* ¶ 1124.03.

But the issue of impairment is ultimately insignificant for Liggett since we have rejected her arguments on treble damages and dividend reinvestment. Though the plan allowed for a period of repayment that would continue for years, the parties informed us at oral argument that Schwartz in fact paid Liggett the full face value of her claim.[7] Given this, it appears that a redo of the confirmation process would be pointless. In addition, setting aside the plan may have consequences for all other creditors. We direct the parties to submit supplemental briefs within ten days on the issue of the impact of a remand of the confirmation issue and whether the confirmation issue appeal should be dismissed as moot.

---

[7] We assume Liggett was not paid the full time value of her claim. If that assumption is incorrect, the parties should so advise us.

**V.**

For the reasons set forth above, we affirm as to the adversary proceeding and the allowed amount of Liggett's claim and leave unresolved the confirmation issue pending further submissions.