## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0783n.06

Case No. 14-4116

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Dec 03, 2015

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MICHAEL BRADLEY, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JACK M. RENO, JR.; TIMOTHY S. | ) | OHIO |
| DOBBINS; TIMOTHY J. TIMBERLAKE; | ) | |
| JOHN DOE #1; JOHN DOE #2, | ) | OPINION |
| | ) | |
| Defendants - Appellees. | ) | |

BEFORE: BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

BOGGS, Circuit Judge.    Michael Bradley, a commercial tractor-trailer driver, was arrested for drunk driving in 2011. Ohio highway trooper Jack Reno had found Bradley's truck, lights on and engine running, parked just outside the fog line of a highway on-ramp. Reno subjected Bradley to several field sobriety tests, all of which he failed. At a suppression hearing, the Ohio state court ruled that Reno had probable cause to arrest Bradley. A jury acquitted Bradley on the charges. He later brought a civil suit pursuant to 42 U.S.C. § 1983, alleging that Reno and other officers on the scene had falsely arrested him. Last year, a panel of this court reversed the district judge's grant of summary judgment to the defendants, holding that the state

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

court's unreviewable probable-cause determination did not have preclusive effect.  On remand, the district court awarded the defendants summary judgment on the ground of qualified immunity.  Reno had reasonable suspicion to subject Bradley to field sobriety tests and probable cause to arrest him for drunk driving.  We therefore affirm.

I

At 10:25 p.m. on April 24, 2011, Ohio State Highway Trooper Jack Reno was patrolling outside Austintown, Ohio when he noticed a tractor-trailer stopped on the shoulder of an interstate on-ramp.  It was parked, lights on and engine running, just outside the fog line without any reflective traffic cones next to it.  Worried that the tractor-trailer posed a safety risk, Reno decided to check on the driver's status.  This court's earlier opinion describes the rest of the encounter:

> Reno soon suspected that alcohol, not a vehicle breakdown, had stranded Bradley alongside the highway. As he spoke to Bradley, Reno noticed several signs of intoxication. Bradley's breath smelled of alcohol, his eyes appeared red and glassy, and his speech was slurred. When asked, Bradley admitted that he had consumed a "couple" "small pitchers" of beer and a "couple" bottles of beer an hour or two earlier at a truck stop fifteen miles away. R. 14–2 at 45. Bradley told Reno that he had parked on the shoulder of the road to get some sleep, but he could not explain why he had stopped on the ramp rather than at a rest stop 200–300 feet down the road.
>
> Bradley failed two field sobriety tests and showed other signs of intoxication, including swaying, losing his balance and failing to follow basic instructions. Reno arrested Bradley for driving while drunk. A breathalyzer test at the local Highway Patrol office confirmed that Bradley's blood-alcohol content (.111 %) exceeded the legal limit for commercial drivers in Ohio (.04%).

*Bradley v. Reno*, 749 F.3d 553, 555 (6th Cir. 2014).  After the State charged him with drunk driving, Bradley filed a motion to suppress his statements as well as the results of the breathalyzer test and the field sobriety tests.  The state court found that Reno had probable cause

to arrest Bradley for operating a commercial vehicle under the influence of alcohol. *See* Ohio Rev. Code § 4506.15(A)(2). The case proceeded to trial and a jury acquitted Bradley.

Five months later, Bradley filed a § 1983 suit against Reno and the other officers involved in his arrest. The complaint alleged that he was arrested without probable cause in violation of the Fourth and Fourteenth Amendments. The district court granted the defendants summary judgment, concluding that Bradley could not relitigate the state court's probable-cause ruling. A panel of this court reversed. On remand, the district court again awarded the defendants summary judgment. It concluded that qualified immunity protected the officers from liability for Bradley's alleged wrongful arrest. He appeals that determination.

II

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must consider the evidence and "all inferences drawn therefrom" in favor of the non-moving party. *Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). However, the mere existence of an alleged factual dispute "will not defeat an otherwise properly supported motion for summary judgment" so long as there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We review de novo a district court's summary-judgment order. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231

(2009)). For a reasonable official to have understood that his actions violate a clearly established statutory or constitutional right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Reno and the other officers are therefore shielded by qualified immunity "unless the facts, when viewed in the light most favorable to [Bradley], would permit a reasonable juror to find that: (1) [they] violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Once qualified immunity is invoked, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 681 (6th Cir. 2013).

Bradley was arrested for violating two Ohio statutes that proscribe driving under the influence. *See* Ohio Rev. Code §§ 4506.15(A)(2), 4511.19(A)(1)(d). He seems to argue that Reno lacked both reasonable suspicion to detain him for field sobriety tests and probable cause to arrest him. We consider his arguments in turn.

A

Reasonable suspicion requires that a detaining officer viewing the totality of circumstances "ha[ve] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). The district court found Reno's suspicion reasonable based on the following facts: the time of night; the tractor-trailer was parked on the side of a highway on-ramp a few hundred feet from a rest stop; its lights were on and engine running without any traffic safety cones; Bradley's breath smelled of alcohol; and he admitted to having recently consumed more than two pitchers of beer. *Bradley v. Reno*, No. 4:12CV00890, 2014 WL 4955948, at *5–6 (N.D. Ohio Sept. 30, 2014). In addition, Bradley's eyes looked red and glassy, and his speech was slurred. These circumstances

4

constitute some of a non-exhaustive list of factors that courts rely upon to judge the reasonableness of an officer's decision to conduct roadside sobriety tests. *See State v. Evans*, 711 N.E.2d 761, 766 n.2 (Ohio Ct. App. 1998). Considering these circumstances in the aggregate, we agree with the district court that Reno had a particularized and objective basis for suspecting that Bradley had driven while drunk.

Bradley challenges that conclusion on several bases. First, he questions whether the stench of alcohol was so strong that Reno could have smelled it from where he was standing. That alleged factual dispute is immaterial because even without Reno's smelling alcohol, a reasonable juror could not find that Reno lacked reasonable suspicion for a field sobriety test. Bradley also argues that the district court erred in considering his admission of drinking. He is correct that an admission to having consumed alcohol may be insufficient when "unsupported by some other evidence." *State v. Newsome*, No. 2012-A-0019, 2012 WL 6110741, at \*2 (Ohio Ct. App. Dec. 10, 2012). But that principle has no application here where many additional factors supported Reno's suspicion. Lastly, Bradley suggests that a "critical" factor is missing: Reno never saw Bradley drive. But an officer need not actually observe a driver operate a vehicle to have probable cause for a drunk-driving arrest (not to mention reasonable suspicion for a field sobriety test), especially when the defendant admits to having driven. *See State v. Finch*, 492 N.E.2d 1254, 1257 (Ohio Ct. App. 1985) ("[I]t is possible to have a valid arrest for driving under the influence of alcohol even though the arresting officer has not actually observed the arrestee operating a vehicle in an erratic or unsafe manner."). Here, even though Reno did not actually witness Bradley operate the tractor-trailer, the totality of circumstances gave Reno a reasonable suspicion of drunk driving.

5

B

To state a Fourth Amendment claim for wrongful arrest, a plaintiff must prove that the arresting officer lacked probable cause. *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). The results of a properly administered field sobriety test may serve as evidence of probable cause to make a drunk-driving arrest. *See State v. Boczar*, 863 N.E.2d 155, 158 (Ohio 2007). The district court's probable-cause finding was based on Bradley's poor performance on two field sobriety tests and other indicia of his intoxication (he swayed, lost his balance, and failed to follow basic instructions).

These circumstances, in combination with the factors that contributed to Reno's reasonable suspicion, were more than enough to give Reno probable cause to believe that Bradley violated § 4506.15(A)(2) and § 4511.19(A)(1)(d). *See, e.g.*, *State v. Criswell*, 833 N.E.2d 786, 788 (Ohio Ct. App. 2005); *State v. Lloyd*, 709 N.E.2d 913, 919–20 (Ohio Ct. App. 1998); *State v. Downey*, 523 N.E.2d 521, 522 (Ohio Ct. App. 1987). In addition, the state court's probable-cause determination, although unreviewable, at least "suggests . . . that the officer behaved reasonably in thinking he had probable cause." *Bradley*, 749 F.3d at 558. No reasonable juror could find that Reno lacked probable cause to arrest Bradley for drunk driving.

Bradley contends that in making its probable-cause finding, the district court ignored Reno's "actual reason" for conducting the field sobriety tests. Even if that were true, it is of no consequence. This court does not entertain a § 1983 Fourth Amendment claim "based on the actual motivations of individual officers" because "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806,

813 (1996). Regardless of Reno's reasons for conducting the field sobriety tests, that decision was supported by reasonable suspicion and Bradley's subsequent arrest by probable cause.

## III

The district court did not err when, after viewing the evidence in a light most favorable to Bradley, it held that a reasonable juror could not find that Reno lacked reasonable suspicion to conduct field sobriety tests and probable cause to arrest Bradley. For the foregoing reasons, we AFFIRM the grant of summary judgment to the defendants on the ground of qualified immunity.