RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ICE HOUSE AMERICA, LLC,

           _Appellant_,

   _v._

CHARLES CARDIN,

           _Appellee_.

No. 13-5764

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:12-cv-00463—J. Ronnie Greer, District Judge.

Argued: January 22, 2014

Decided and Filed: May 13, 2014

Before: SUHRHEINRICH, SILER, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael S. Kelley, KENNERLY, MONTGOMERY & FINLEY, P.C., Knoxville, Tennessee, for Appellant. William E. Maddox, Jr., WILLIAM E. MADDOX, JR., LLC, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Michael S. Kelley, KENNERLY, MONTGOMERY & FINLEY, P.C., Knoxville, Tennessee, for Appellant. William E. Maddox, Jr., WILLIAM E. MADDOX, JR., LLC, Knoxville, Tennessee, for Appellee.

1

———————

**OPINION**

———————

KETHLEDGE, Circuit Judge.   The question presented in this case is whether the 2005 amendments to the Bankruptcy Code abrogated the so-called "absolute-priority rule" as applied to individual debtors who file for bankruptcy under Chapter 11 of the Code.   The bankruptcy court said yes, and approved a bankruptcy plan that allowed the debtor, Charles Cardin, to retain most of his pre-petition assets while paying his principal unsecured creditor, Ice House America, LLC, less than 10 cents on the dollar of its approved claim.   We respectfully disagree with the bankruptcy court's reading of the 2005 amendments, and reverse.

Ice House manufactures stand-alone machines that make cubed ice and then vend the ice in bags to consumers.   Cardin bought eight of the machines, and operates them at various locations in Eastern Tennessee.   The machines provide substantial income:   $264,000 in 2012, according to Cardin's own projections.   Separately, in 2004, Cardin (through a company he wholly owns) also signed agreements to be the exclusive distributor of Ice House's machines in Tennessee.   But four years later Ice House sued for breach, eventually obtaining two judgments against Cardin totaling $1,301,900, without interest.   Cardin then filed for bankruptcy as an individual debtor.

Individual debtors have two basic options under the Code.   First, a debtor can file for liquidation under Chapter 7, under which all of the debtor's non-exempt assets are sold off and the proceeds distributed to creditors.   Alternatively, a debtor can file for reorganization under Chapters 11 or 13, which allow the debtor to retain assets, restructure debts, and pay creditors under a court-approved plan.

Individual debtors who choose the reorganization option usually file for bankruptcy under Chapter 13.   *See* 11 U.S.C. § 1301.   But some debtors—like Cardin here—are barred from filing under Chapter 13 because their debts are too large.   *See* 11 U.S.C. § 109(e).   These debtors instead file under Chapter 11, which applies more frequently to corporate reorganizations.   *Toibb v. Radloff*, 501 U.S. 157, 160-61 (1991).

Under Chapter 11, a debtor must file a proposed plan of reorganization. A plan must identify, among other things, any claims it will "impair." 11 U.S.C. § 1123(a)(3). A creditor's claim is impaired if, under the plan, the creditor will not receive full value for the claim. 11 U.S.C § 1124. After the plan is filed, creditors vote to accept or reject it. 11 U.S.C § 1126. Then the bankruptcy court holds a hearing and decides whether to confirm the plan based upon 16 criteria. 11 U.S.C § 1129. As a general rule, the court cannot confirm a plan if any impaired creditor votes to reject it. 11 U.S.C § 1129(a)(8). But "[s]ection 1129(b) creates an exception to that general rule, permitting confirmation of nonconsensual plans—commonly known as 'cramdown' plans—if 'the plan . . . is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2069 (2012) (quoting 11 U.S.C. § 1129(b)(2)(A)).

In order for a plan to be "fair and equitable" for purposes of § 1129(b), it must satisfy the absolute-priority rule. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988). The rule has been "a cornerstone of equitable distribution for Chapter 11 creditors for over a century." *In re Lively*, 717 F.3d 406, 410 (5th Cir. 2013). Originally a judicial gloss upon the 1898 Bankruptcy Act, the absolute-priority rule was codified in the 1978 version of the Code. As codified, the rule provides that every unsecured creditor must be paid in full before the debtor can retain "any property" under a plan. 11 U.S.C. § 1129(b)(2)(B)(ii).

The parties agree that the absolute-priority rule is not satisfied here. According to Cardin's bankruptcy filings, his assets include his home, valued at $420,000, his ice machines, valued in total at $320,000, and a 2011 Ford F150 pickup truck, valued at $30,000. Two of Cardin's creditors are more than fully secured: Citizen's National Bank holds mortgages totaling approximately $543,000 on the home and ice machines, leaving Cardin with almost $200,000 of equity in those assets; and Ford Motor credit has a $15,429 claim secured by the F150, leaving Cardin with about $14,500 of equity in the truck. Cardin's plan allows him to retain all of these assets after paying off the loans they secure. Meanwhile, the plan requires Cardin to make a single payment of $124,000 towards Ice House's unsecured claim of $1.545 million. The plan also requires Cardin to "remit" to Ice House the amount of any disposable income that he earns during the five years following the plan's confirmation (but not any income thereafter).

Ice House and the United States Trustee objected to Cardin's plan on the ground that it violates the absolute-priority rule. The bankruptcy court overruled the objections, construing the 2005 amendments to the Bankruptcy Code to eliminate the absolute-priority rule as applied to individual debtors. The bankruptcy court then confirmed Cardin's plan. Ice House appealed to the district court, which certified the question presented for direct appeal to our court. 26 U.S.C. § 158(d)(2)(B). We granted permission for this appeal. 26 U.S.C. § 158(d)(2)(A).

We review the bankruptcy court's interpretation of the Code de novo. *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 988 (6th Cir. 2000). Subject to certain exceptions not relevant here, 11 U.S.C. § 541(a)(1) defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." Thus, prior to the 2005 amendments to the Code, "property of the estate"—and thus the property subject to the absolute-priority rule in Chapter 11 cases—was only the property the debtor owned "as of the commencement of the case."

But Congress expanded the definition of "property of the estate" in the 2005 amendments to the Code. Those amendments included the addition of an entirely new section to Chapter 11, namely § 1115, which provides:

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—
>
> > (1) all property of the kind specified in section 541 that the debtor acquires *after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
> >
> > (2) earnings from services performed by the debtor *after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.
>
> (b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115 (emphasis added). By its plain terms, this section expands the definition of "property of the estate" in Chapter 11 cases to include, for the first time, property obtained by the debtor "after the commencement of the case." And all of that property, absent some other amendment to the Code, would be subject to the absolute-priority rule.

But Congress did enact additional relevant amendments in 2005. Specifically, Congress amended § 1129(b)(2)(B)(ii) to add the italicized language below:

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

(Emphasis added.)

The parties agree that the italicized language creates an exception to the absolute-priority rule, and moreover that the exception applies only in Chapter 11 cases where the debtor is an individual. But the parties otherwise disagree upon the exception's scope. Ice House argues that the italicized language excepts from the absolute-priority rule only property that is added to the estate by § 1115, *i.e.*, post-petition property. In contrast, Cardin and the bankruptcy court believe that the italicized language excepts not only post-petition property added by § 1115, but also pre-petition property that was already part of the estate under § 541(a). Thus, under Cardin's reading, the 2005 amendment to § 1129(b)(2)(B)(ii) excepts *all* of an individual debtor's property from the absolute-priority rule—which is to say that the rule does not apply to individual debtors at all.

The critical language in § 1129(b)(2)(B)(ii) is that "the debtor may retain property included in the estate under section 1115[.]" And the key word within that language is "included." "Include" is a transitive verb, which means it "show[s] action, either upon someone or something." Shertzer, *Elements of Grammar* 26 (1986). The action described by "include" is either "to take in as a part, an element, or a member" (first definition) or "to contain as a subsidiary or subordinate element" (second definition). *The American Heritage Dictionary* 913 (3d ed. 1992). The first definition ("to take in") describes genuine action—grabbing something and making a part of a larger whole—whereas the second definition ("to contain") lends itself, more dryly, to a description of things that are already there—"the duties of a fiduciary include . . . ." The first definition is plainly the better fit in § 1129(b)(2)(B)(ii): converted into the active voice, § 1129(b)(2)(B)(ii) refers to property that § 1115 includes in the estate, which naturally reads as "property that § 1115 takes into the estate," rather than as "property that § 1115 contains in the estate." Thus—employing this definition and converted into the active

voice—§ 1129(b)(2)(B)(ii) provides that "the debtor may retain property that § 1115 takes into the estate."

Section 1115 cannot take into the estate property that was already there. And long before Congress enacted the 2005 amendments, § 541 had already brought into the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." What § 1115 adds to that pile of legal and equitable interests—and thus what § 1115 takes into the estate—is property "that the debtor acquires *after* the commencement of the case[.]" 11 U.S.C. § 1115(a) (emphasis added). (We recently read parallel language in Chapter 13 precisely the same way. *See In re Seafort*, 669 F.3d 662, 667 (6th Cir. 2012) ("§ 541 fixes property of the estate as of the date of filing, while § 1306 adds to the 'property of the estate' property interests which arise post-petition.")) Thus, it is only *that* property—property acquired after the commencement of the case, rather than property acquired before then—that "the debtor may retain" when his unsecured creditors are not fully paid. 11 U.S.C. § 1129(b)(2)(B)(ii).

Our interpretation is buttressed by the Supreme Court's directive not to "read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010). And Cardin's interpretation is anything but clear. He essentially reads the clause "property included in the estate under section 1115[,]" as used in § 1129(b)(2)(B)(ii), to mean any property *mentioned* in § 1115, even if that property was already "included" in the estate by § 541(a)—which pre-petition property undisputedly is. Moreover, even if one conflates "included" and "mentioned"—two words that do not mean the same thing—to adopt Cardin's meaning one must still airbrush away the phrase that follows, namely "in the estate," and then change "under" to "in" before "§ 1115." This is a Rube-Goldberg reading at best; and we think it much more likely that, if Congress meant to except individual debtors from the absolute-priority rule, it would have simply amended § 1129(b)(2)(B)(ii) to say something more like the following: "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except in a case in which the debtor is an individual*."

In summary, what the 2005 amendment to § 1129(b)(2)(B)(ii) accomplishes is straightforward: the amendment maintains the pre-2005 scope of the absolute-priority rule, thus limiting the rule's scope to pre-petition property, even as the definition of "property of the estate" expands to include post-petition property in § 1115.

All that said, we acknowledge a contrary point that the bankruptcy court made in its thoughtful decision in this case. By way of background, Chapter 13 does not have an absolute-priority rule, but does require the debtor to dedicate all of his "projected disposable income" for five years to the payment of unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). A 2005 amendment to the Code applies this same requirement to individual debtors in Chapter 11. Thus, as the bankruptcy court observed (and Cardin reiterates on appeal), an individual debtor in Chapter 11 is hit by a double whammy: he must dedicate at least five years' disposable income to the payment of unsecured creditors, and—unlike a debtor in Chapter 13—is also subject to the absolute-priority rule (and thus cannot retain any pre-petition property) if he does not pay those creditors in full. We recognize that hardship; and, like the Supreme Court in *Ahlers*, "we do not take lightly the concerns" that drove the bankruptcy court to its result. 485 U.S. at 209. But neither do we presume that Congress was without reasons to limit the exception to the absolute-priority rule the way it did. In any event, our task is to interpret the laws that Congress enacted, not to determine whether they are fair. *See id.* ("relief . . . cannot come from a misconstruction of the applicable bankruptcy laws, but rather, only from action by Congress").

For the reasons given, we think the best interpretation of the 2005 amendment to § 1129(b)(2)(B)(ii) is the one we adopt today. So does every other circuit court to have reached the issue. *See In re Lively*, 717 F.3d at 410; *In re Stephens*, 704 F.3d 1279, 1287 (10th Cir. 2013); *In re Maharaj*, 681 F.3d 558, 565 (4th Cir. 2012). We therefore hold that the absolute-priority rule continues to apply to pre-petition property of individual debtors in Chapter 11 cases. The plan confirmed here did not comply with the rule, and thus the plan's confirmation was error.

The judgment of the bankruptcy court is reversed, and the case remanded for further proceedings consistent with this opinion.