**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID K. ZACHARY; ANNMARIE S. SNORSKY, *Debtors-Appellants*, v. CALIFORNIA BANK & TRUST, *Respondent-Appellee*. | No. 13-16402 D.C. No. 2:11-bk-42866 OPINION |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Thomas C. Holman, Bankruptcy Judge, Presiding

Argued and Submitted
October 21, 2015—Stanford Law School, California

Filed January 28, 2016

Before: Richard A. Paez, Mary H. Murguia,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

## Bankruptcy

Affirming the bankruptcy court's order sustaining an objection to a chapter 11 plan of reorganization, the panel held that the absolute priority rule in 11 U.S.C. § 1129(b)(2)(B)(ii)―providing that a dissenting class of unsecured creditors must be provided for in full before an individual debtor can retain any property under a reorganization plan―continues to apply following the amendments to the Bankruptcy Code enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act.

Following other circuits, the panel overruled *In re Friedman*, 466 B.R. 471 (9th Cir. BAP 2012), and adopted the "narrow view" that the BAPCPA amendments merely have the effect of allowing individual chapter 11 debtors to retain property and earnings acquired after the commencement of the case that would otherwise be excluded under § 541(a)(6) & (7). Thus, an individual debtor may not "cram down" a plan that would permit the debtor to retain prepetition property that is not excluded from the estate by § 541, but may cram down a plan that permits the debtor to retain only postpetition property.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Gregg W. Koechlein (argued), Reno, Nevada, for Debtors-Appellants.

Matthew D. Murphey (argued), Penelope Parmes, Martin W. Taylor, Meghan Canty Sherrill, Troutman Sanders LLP, Irvine, California, for Respondent-Appellee.

**OPINION**

HURWITZ, Circuit Judge:

This case presents an arcane but important question of first impression in this Circuit: Does the absolute priority rule continue to apply in individual chapter 11 reorganizations after the amendments to the Bankruptcy Code enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")? We hold that it does.

## I.  Factual and Procedural Background

In September 2011, David K. Zachary and Annmarie S. Snorsky ("Debtors") filed a joint voluntary individual chapter 11 petition. The Debtors' operative plan of reorganization placed their largest unsecured creditor, California Bank & Trust ("California Bank"), into its own class of unsecured creditors and proposed to pay it $5,000 on its claim of nearly $2,000,000. California Bank's claim was thus "impaired under the plan." 11 U.S.C. § 1129(a)(8)(B).

California Bank objected, arguing that the plan violated the so-called absolute priority rule of 11 U.S.C.

§ 1129(b)(2)(B)(ii).  The bankruptcy judge, disagreeing with the Ninth Circuit Bankruptcy Appellate Panel ("BAP") opinion in *In re Friedman*, 466 B.R. 471 (B.A.P. 9th Cir. 2012), sustained the objection, holding that "the absolute priority rule still prevails" in individual chapter 11 bankruptcies after the enactment of BAPCPA.[1]

Debtors filed a timely notice of appeal of the bankruptcy court's order sustaining California Bank's objection to their plan.  The bankruptcy court certified the appeal, and this Court authorized a direct appeal.  28 U.S.C. § 158(a), (d)(2)(A).

## II. Discussion

We review "de novo the bankruptcy court's and the BAP's interpretations of the bankruptcy statute."  *In re Boyajian*, 564 F.3d 1088, 1090 (9th Cir. 2009).  "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."  *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989).

---

[1] Debtors argue that *In re Windmill Farms, Inc.*, 70 B.R. 618 (B.A.P. 9th Cir. 1987), *rev'd on other grounds*, 841 F.2d 1467, 1474 (9th Cir. 1988), "held that BAP decisions were binding on all bankruptcy courts in this circuit," and the bankruptcy court here was required to follow *In re Friedman*.  Because we must today address the continued applicability of the absolute priority rule regardless of the precedential effect of BAP opinions, we pretermit consideration of the issue.  *Cf. Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) (O'Scannlain, J., specially concurring) (discussing need for judicial council action to make BAP decisions binding on all bankruptcy courts within the circuit).

## A. Individual chapter 11 bankruptcies and the absolute priority rule.

"Individual debtors have two basic options under the Code." *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 736 (6th Cir. 2014). They can either liquidate their non-exempt assets under chapter 7, or file for reorganization under chapters 11 or 13. *See* 11 U.S.C. §§ 701–84, 1101–46, 1301–30. A chapter 13 reorganization, however, is only available to individual debtors whose debts fall below certain limits. *See* 11 U.S.C. § 109(e). Individual debtors with more debt can only file for reorganization under chapter 11, which is "used primarily by debtors with ongoing businesses." *Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (emphasis omitted).

An individual filing under chapter 11 may confirm a plan of reorganization in one of two ways. The first is by satisfying the bankruptcy court that a plan complies with each of the sixteen paragraphs in 11 U.S.C. § 1129(a). Under this path, "[o]f particular note is the requirement of obtaining the consent of each class of creditor as required by paragraph (8) of § 1129(a)." *In re Friedman*, 466 B.R. at 480. Absent unanimous approval of the plan by each class of creditors, a debtor must pursue the second path to confirmation.

Under the second path, a debtor can obtain confirmation by satisfying the bankruptcy court that, notwithstanding any creditor's objections, the plan is "fair and equitable" to each creditor class. 11 U.S.C. § 1129(b)(1), (2). Because this "nonconsensual method of confirmation" is obtained over creditor objection, it is known as a "cramdown." *In re Friedman*, 466 B.R. at 480. A debtor may cram down a plan only if it complies with the absolute priority rule in § 1129(b)(2)(B)(ii). Put another way, a bankruptcy judge

may find that a debtor's plan is "fair and equitable" to an objecting creditor only if the plan complies with the absolute priority rule.

The absolute priority rule is a "judicially created concept," with its genesis in "early twentieth-century railroad cases." *In re Friedman*, 466 B.R. at 478. It arose from the Bankruptcy Code's statutory requirement, now codified in 11 U.S.C. § 1129(b)(2), that a reorganization plan be "fair and equitable" to each class of creditors. The rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (alteration omitted) (quoting *In re Ahlers*, 794 F.2d 388, 401 (8th Cir. 1986)). "The U.S. Supreme Court adopted the absolute priority rule to prevent deals between senior creditors and equity holders that would impose unfair terms on unsecured creditors." *In re Friedman*, 466 B.R. at 478; *see also N. Pac. Ry. Co. v. Boyd*, 228 U.S. 482, 503–04 (1913). The rule later "gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978" as 11 U.S.C. § 1129(b)(2)(B)(ii). *Norwest*, 485 U.S. at 202.

Before the adoption of BAPCPA in 2005, it was clear that "no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule." *Id.* At that time, the absolute priority rule provided:

> [T]he condition that a plan be fair and equitable with respect to a class [of creditors] includes the following requirements:

. . . .

> (B) With respect to a class of unsecured claims–
>
>> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>>
>> (ii) *the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property*.

11 U.S.C. § 1129(b)(2)(B)(ii) (1994) (emphasis added). Thus, under the pre-BAPCPA Bankruptcy Code, it was clear that "every unsecured creditor must be paid in full before the debtor can retain 'any property' under a plan." *Ice House*, 751 F.3d at 737 (quoting 11 U.S.C. § 1129(b)(2)(B)(ii)).

## B. Amendment of the absolute priority rule by BAPCPA.

Three provisions of the post-BAPCPA Bankruptcy Code intertwine to implement the absolute priority rule. First, § 541, which was not altered by BAPCPA, defines an estate in bankruptcy as "comprised of all" the property enumerated in that section, "wherever located and by whomever held," including "all legal or equitable interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a), (a)(1) (emphasis added). Under this section, the "property of the estate," and, therefore, the property subject

to the absolute priority rule in chapter 11 cases, is "the property the debtor owned 'as of the commencement of the case.'" *Ice House*, 751 F.3d at 737–38 (quoting 11 U.S.C. § 541(a)(1)).

The second relevant provision is § 1115, which was added in 2005 by BAPCPA. Pub. L. No. 109-8, § 321, 119 Stat. 23, 94–95 (2005). Section 1115, which only applies to individual chapter 11 proceedings, adds to the § 541 "property of the estate" certain property obtained by the debtor "after the commencement of the case":

> In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541–
>
> > (1) all property of the kind specified in section 541 that the debtor acquires *after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
> >
> > (2) earnings from services performed by the debtor *after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. § 1115(a) (emphasis added).

Finally, BAPCPA amended the absolutely priority rule itself, adding the underscored language to § 1129(b)(2)(B)(ii):

> [T]he condition that a plan be fair and equitable with respect to a class [of creditors] includes the following requirements:
>
> . . . .
>
>> (B) With respect to a class of unsecured claims–
>>
>>> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>>>
>>> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

Pub. L. No. 109-8, § 321, 119 Stat. 23, 95 (emphasis added).

The new clauses in subsection (B)(ii) plainly create an exception to the absolute priority rule that applies only to a chapter 11 "case in which the debtor is an individual." 11 U.S.C. § 1129(b)(2)(B)(ii). But the question is, what is the exception's scope? Or, put another way, what property may an individual chapter 11 debtor retain "without running

afoul of the absolute priority rule"? *In re Friedman*, 466 B.R. at 487 (Jury, Bankr. J., dissenting).

### C. Post-BAPCPA case law.

"A significant split of authorities has developed nationally among the bankruptcy courts" regarding the answer to this question. *In re Maharaj*, 681 F.3d 558, 563 (4th Cir. 2012) (describing division). Two conflicting positions have emerged: the "broad view" and the "narrow view." *Id.*

Courts applying the broad view hold that

> by including in § 1129(b)(2)(B)(ii) a cross-reference to § 1115 (which in turn references § 541, the provision that defines the property of a bankruptcy estate), Congress intended to include the entirety of the bankruptcy estate as property that the individual debtor may retain, thus effectively abrogating the absolute priority rule in Chapter 11 for individual debtors.

*Id.* Under this view, an individual debtor is entitled to retain most prepetition and postpetition property and nonetheless cram down a plan over an unsecured creditor's objection. *See, e.g.*, *In re Friedman*, 466 B.R. at 482; *In re Anderson*, No. 11-61845-11, 2012 WL 3133895, at *7 n.6 (Bankr. D. Mont. Aug. 1, 2012); *In re Shat*, 424 B.R. 854, 868 (Bankr. D. Nev. 2010); *In re Roedemeier*, 374 B.R. 264, 276 (Bankr. D. Kan. 2007).

Courts applying the narrow view instead hold "that the BAPCPA amendments merely have the effect of allowing individual Chapter 11 debtors to retain property and earnings

acquired after the commencement of the case that would otherwise be excluded under § 541(a)(6) & (7)." *In re Maharaj*, 681 F.3d at 563. Under this view, an individual debtor may not cram down a plan that would permit the debtor to retain prepetition property that is not excluded from the estate by § 541, but may cram down a plan that permits the debtor to retain only postpetition property.

A split panel of the Ninth Circuit BAP accepted the broad view in *In re Friedman*, 466 B.R. at 484. But, all of our sister circuits that have considered the issue have adopted the narrow view,**[2]** as have a sizeable majority of the district, bankruptcy appellate, and bankruptcy courts.**[3]** We

---

**[2]** *See Ice House*, 751 F.3d at 740 ("We therefore hold that the absolute-priority rule continues to apply to pre-petition property of individual debtors in Chapter 11 cases."); *In re Lively*, 717 F.3d 406, 410 (5th Cir. 2013) ("The absolute priority rule, in particular, has been a cornerstone of equitable distribution for Chapter 11 creditors for over a century. We must presume Congress was well aware of that rule and, in the absence of a clearer directive, modified § 1129(b)(2)(B)(ii) in order to refine it, not reverse it, for individual debtors."); *In re Stephens*, 704 F.3d 1279, 1287 (10th Cir. 2013) ("[W]e decline to find an implied repeal [of the absolute priority rule] here."); *In re Maharaj*, 681 F.3d at 575 ("[W]e believe that Congress did not intend to abrogate the absolute priority rule for individual Chapter 11 debtors.").

**[3]** *See, e.g.*, *In re Woodward*, 537 B.R. 894, 901 (B.A.P. 8th Cir. 2015); *In re Brown*, 505 B.R. 638, 648-49 (E.D. Pa. 2014); *In re Tucker*, 479 B.R. 873, 877-78 (Bankr. D. Or. 2012); *In re Arnold*, 471 B.R. 578, 613-14 (Bankr. C.D. Cal. 2012); *In re Borton*, No. 09-00196-TLM, 2011 WL 5439285, at *4 (Bankr. D. Idaho Nov. 9, 2011); *In re Kamell*, 451 B.R. 505, 512 (Bankr. C.D. Cal. 2011); *In re Draiman*, 450 B.R. 777, 821 (Bankr. N.D. Ill. 2011); *In re Stephens*, 445 B.R. 816, 820-21 (Bankr. S.D. Tex. 2011); *In re Karlovich*, 456 B.R. 677, 682 (Bankr. S.D. Cal. 2010); and *In re Gbadebo*, 431 B.R. 222, 230 (Bankr. N.D. Cal. 2010). *But see, e.g.*, *In re Friedman*, 466 B.R. at 482; *In re*

today agree with our sister circuits and overrule *In re Friedman*.

## D.  Interpretation of the BAPCPA amendments.

BAPCPA added § 1115 as an entirely new provision of the Bankruptcy Code.  That section "expands the definition of 'property of the estate' in Chapter 11 cases to include, for the first time, property obtained by the debtor 'after the commencement of the case.'  And all of that property, absent some other amendment to the Code, would be subject to the absolute-priority rule." *Ice House*, 751 F.3d at 738 (quoting 11 U.S.C. § 1115(a)(1), (2)).  The new language in § 1129(b)(2)(B)(ii) added by BAPCPA obviously creates "an exception to the absolute-priority rule," but less obvious is "the exception's scope." *Id.*  The key to that question is determining what the word "included" means in the phrase of § 1129(b)(2)(B)(ii) stating that "the debtor may retain property included in the estate under section 1115."

The *Friedman* majority determined:

> "Included" is not a word of limitation.  To limit the scope of estate property in §§ 1129 and 1115 would require the statute to read "included, except for the property set out in Section 541" (in the case of § 1129(b)(2)(B)(ii)), and "in addition to, but not inclusive of the property described in Section 541" (in the case of § 1115).

---

*Anderson*, 2012 WL 3133895, at \*7 n.6; *In re Shat*, 424 B.R. at 868; and *In re Roedemeier*, 374 B.R. at 276.

466 B.R. at 482 (footnote omitted). In contrast, the Sixth Circuit's opinion in *Ice House* held:

> The critical language in § 1129(b)(2)(B)(ii) is that "the debtor may retain property included in the estate under section 1115." And the key word within that language is "included." "Include" is a transitive verb, which means it "shows action, either upon someone or something." Shertzer, *Elements of Grammar* 26 (1986). The action described by "include" is either "to take in as a part, an element, or a member" (first definition) or "to contain as a subsidiary or subordinate element" (second definition). *The American Heritage Dictionary* 913 (3d ed. 1992). The first definition ("to take in") describes genuine action—grabbing something and making a part of a larger whole—whereas the second definition ("to contain") lends itself, more dryly, to a description of things that are already there— "the duties of a fiduciary include. . . ." The first definition is plainly the better fit in § 1129(b)(2)(B)(ii): converted into the active voice, § 1129(b)(2)(B)(ii) refers to property that § 1115 includes in the estate, which naturally reads as "property that § 1115 takes into the estate," rather than as "property that § 1115 contains in the estate." Thus—employing this definition and converted into the active voice—§ 1129(b)(2)(B)(ii) provides that "the debtor may retain property that § 1115 takes into the estate."

*Ice House*, 751 F.3d at 738–39 (alterations omitted).  Under this reading, "what § 1115 takes into the estate is property 'that the debtor acquires *after* the commencement of the case,'" and it is only "*that* property" that "'the debtor may retain' when his unsecured creditors are not fully paid."  *Id.* at 739 (quoting 11 U.S.C. §§ 1115(a), 1129(b)(2)(B)(ii)) (internal punctuation omitted).

We agree with the Sixth Circuit.  Section 1115 and the new clauses in § 1129(b)(2)(B)(ii) were both added by BAPCPA.  Reading these two provisions as defining a new class of property that is exempt from the absolute priority rule nicely harmonizes the new provisions.[4]  *See In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013) ("[W]e are inclined to

---

[4] Some courts and commentators have suggested that the cross-reference in the second new clause in § 1129(b)(2)(B)(ii) to § 1129(a)(14), a provision involving domestic support obligations, is a scrivener's error and was meant to refer to § 1129(a)(15), which involves a new "best efforts" requirement added to chapter 11 by BAPCPA.  *See, e.g.*, *In re Lucarelli*, 517 B.R. 42, 47 n.2 (Bankr. D. Conn. 2014); *In re Lively*, 467 B.R. 884, 890 n.3 (Bankr. S.D. Tex. 2012); *In re Shat*, 424 B.R. at 860 n.21; Ralph Brubaker, *The Absolute Priority Rule for Individual Chapter 11 Debtors:  To Be or Not to Be?*, 32 No. 10 Bankr. L. Letter, at 5 (Oct. 2012) ("[A]s all fully recognize, the cross-reference in the absolute priority rule amendment to § 1129(a)(14) (dealing with full payment of domestic support obligations) was obviously a drafting error.").  We need not decide that issue today.  We note that although the reference to (a)(14) may have been a scrivener's error, it is "not an entirely absurd mixup. . . .  One could easily assume that Congress wished to protect domestic support creditors by not allowing a debtor to keep any postpetition earnings—a form of Section 1115 property—so long as any domestic support obligation was not current."  *In re Shat*, 424 B.R. at 860 n.21.

agree with the bankruptcy court in this case that the 'narrow' interpretation is unambiguous and correct.").

The history of the absolute priority rule also strongly supports the narrow view. Congress repealed the absolute priority rule in 1952, only to reinstate it in 1978, demonstrating that when it intends to abrogate the rule, it knows how to do so explicitly. *Compare* H.R. Rep. No. 82-2320 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1960, 1981–82, *with* Bankruptcy Code of 1978, Pub. L. No. 95-598, § 1129, 92 Stat. 2549, 2635–38 (codified in scattered sections of 11 and 28 U.S.C.).[5]   More importantly, the

---

[5] The legislative history of the BAPCPA also bolsters the view that Congress did not intend to repeal the absolute priority rule.   The Judiciary Committee Report describes "various consumer protection reforms" in BAPCPA, such as penalizing "a creditor who unreasonably refuses to negotiate" and requiring certain credit solicitations to "include enhanced consumer disclosures."   H.R. Rep. No. 109-31(I), pt. 1, at 2 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 89.   But this list of protections does not include any supposed repeal of the absolute priority rule.   It seems unlikely that Congress would address a cornerstone rule of bankruptcy practice "in the most oblique way possible, and yet omit any mention of this remedy from the legislative history."   *In re Maharaj*, 681 F.3d at 575; *see also Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) ("Furthermore, this Court has been reluctant to accept arguments that would interpret the [Bankruptcy] Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."); *In re Bonner Mall P'ship*, 2 F.3d 899, 913 (9th Cir. 1993) ("Where the text of the Code does not unambiguously abrogate pre-Code practice, courts should presume that Congress intended it to continue unless the legislative history dictates a contrary result.") (citing *Dewsnup*, 502 U.S. at 419).   It also seems unlikely that Congress would facilitate cramdowns, typically objected to by creditors, in an act designed "to correct perceived abuses of the bankruptcy system." *Ransom v. FIA Card Servs.*, 562 U.S. 61, 64 (2011) (quoting *Milavetz,*

Supreme Court has expressly warned against finding implied repeal of provisions of the Bankruptcy Code. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 380 (1988) ("Such a major change in the existing rules would not likely have been made without specific provision in the text of the statute; it is most improbable that it would have been made without even any mention in the legislative history.") (citation omitted); *see also In re Maharaj*, 681 F.3d at 571 ("The canon against implied repeal is particularly strong in the field of bankruptcy law.").

Courts adopting the broad view have stressed that "Congress in adopting BAPCPA's individual debtor chapter 11 provisions borrowed provisions from chapter 13," which does not have an absolute priority rule. *In re Friedman*, 466 B.R. at 483 (comparing, inter alia, §§ 1123(a)(8) and 1322(a)(1), §§ 1141(d)(5)(A) and 1328(a), and §§ 1127(e) and 1329(a)); *see also In re Shat*, 424 B.R. at 868 (noting "the host of change[s] to chapter 11 with respect to individuals, all made with the goal of shaping an individual's chapter 11 case to look like a chapter 13 case"); *In re Roedemeier*, 374 B.R. at 275 ("Many of the BAPCPA's changes to Chapter 11 apply only to individual debtors and are clearly drawn from the Chapter 13 model."). But if the BAPCPA amendments were intended to abrogate the absolute priority rule for chapter 11 individual debtors, Congress could have achieved that goal in a far more straightforward manner. Instead of adding language to § 1129(b)(2)(B)(ii), Congress simply could have made that provision inapplicable to individual chapter 11

*Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010)); *see also In re Friedman*, 466 B.R. at 490 (Jury, Bankr. J., dissenting) ("[T]he purpose behind BAPCPA was to have debtors pay more, not less.").

reorganizations. *See In re Lively*, 717 F.3d at 410 (describing broad view as "a startling, and most indirect, way for Congress to have effected partial implicit repeal of the very provision that the section amended"). Or Congress could have raised the debt limits for chapter 13 cases, ushering more individuals into that regime. *See In re Maharaj*, 681 F.3d at 573 ("Congress could have effected the changes that Debtors argue it sought in a far less awkward and convoluted manner by simply raising the Chapter 13 debt limits and making additional individuals eligible to proceed under that chapter."); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.") (citation omitted).

We acknowledge that retaining the absolute priority rule in chapter 11 cases works a "double whammy" on a debtor because, under the BAPCPA amendments to § 1129(a)(15), he "must dedicate at least five years' disposable income to the payment of unsecured creditors, and—unlike a debtor in Chapter 13—is also subject to the absolute-priority rule (and thus cannot retain any pre-petition property) if he does not pay those creditors in full." *Ice House*, 751 F.3d at 740. But the broad view could exact a heavy penalty on a "crammed down" creditor, as this case illustrates. Our task is not to balance the equities, however, but to interpret the Bankruptcy Code. *See Norwest*, 485 U.S. at 209 (noting that relief from any unfairness in the statutory scheme "cannot come from a misconstruction of the applicable bankruptcy laws, but rather, only from action by Congress"). We

conclude today that the BAPCPA amendments do not impliedly repeal the long-standing absolute priority rule.

## CONCLUSION

The order of the bankruptcy court sustaining California Bank's objection to the Debtors' plan is **AFFIRMED**.