NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: UBALDO JUAREZ,<br><br>     Debtor,<br><br>------------------------------<br><br>EDGAR TODESCHI; GEORGINA PONCE,<br><br>     Appellants,<br><br> v.<br><br>UBALDO JUAREZ,<br><br>     Appellee. | No. 19-60051<br><br>BAP No. 19-1028<br><br>MEMORANDUM* |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Faris, Lafferty III, and Brand, Bankruptcy Judges, Presiding

Submitted November 18, 2020**
Phoenix, Arizona

Before: BYBEE, MURGUIA, and BADE, Circuit Judges.

---

  *  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

  **  The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Appellants Edgar Todeschi and Georgina Ponce (collectively, Creditors) appeal the decision of the Bankruptcy Appellate Panel for the Ninth Circuit (BAP) affirming the bankruptcy court's confirmation of Appellee Ubaldo Juarez's Chapter 11 plan (Plan). We affirm.

This court reviews de novo the decision of the BAP, but gives the BAP no deference, and reviews the bankruptcy court's decision independently. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005). The bankruptcy court's decision to confirm a Chapter 11 plan is reviewed for abuse of discretion. *In re Marshall*, 721 F.3d 1032, 1045 (9th Cir. 2013). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of material fact." *Id.* at 1039 (citation omitted).

1.      Creditors assert that the Plan did not comply with 11 U.S.C. § 1129(a)(2). That provision requires that "[t]he proponent of the plan complies with the applicable provisions of this title." *Id.*

Creditors first contend that Juarez's formation and operation of a limited liability company (UBLA) was an "[a]buse of the Bankruptcy System [sic]" because they assert he used UBLA to "incur debt and to buy property out of the ordinary course without Court supervision." But the bankruptcy court held an evidentiary hearing in which Creditors probed their allegations of various improprieties, and the bankruptcy court found that "no testimony was presented to

2

show that UBLA was not properly formed, funded, or operated." This court "give[s] great deference to the bankruptcy court's findings" when they are based on its assessment of testimony. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citation omitted). Moreover, the bankruptcy court noted that Juarez disclosed his ninety-percent interest in UBLA, that he amended his schedules to reflect an increase in value of his interest in UBLA, and that he deposited a $10,000 distribution from UBLA into his debtor-in-possession account. These findings support the bankruptcy court's rejection of Creditors' argument that UBLA was being used for an improper purpose. Therefore, the bankruptcy court did not clearly err in concluding that Juarez's formation and operation of UBLA did not violate any applicable bankruptcy provision.

Creditors also argue that Juarez transferred real estate commissions to his longtime domestic partner and real estate associate, Leticia Arreola, and did not properly report these commissions as his income in violation of 11 U.S.C. § 521. However, the bankruptcy court heard the testimony of Juarez, Arreola, and one of their business associates, and it concluded that "the[] transfers represented amounts Ms. Arreola earned" and that "Creditors did not refute this testimony." Again, we accord the bankruptcy court's factual findings "great deference" because they are based on its evaluation of trial testimony. *See Retz*, 606 F.3d at 1196. The

bankruptcy court did not clearly err in finding Arreola earned the transferred amounts.

Neither of the challenged findings were clearly erroneous. Therefore, we conclude that the bankruptcy court did not abuse its discretion in rejecting Creditors' objection to the Plan under § 1129(a)(2).

2. Creditors argue that Juarez's formation and operation of UBLA and transfers of commissions to Arreola indicate that the Plan was not "proposed in good faith" as 11 U.S.C. § 1129(a)(3) requires. But the formation and operation of UBLA and transfers of commissions to Arreola are not relevant to the § 1129(a)(3) good faith inquiry. The focus under § 1129(a)(3) is limited to "the manner of the plan's *proposal*," not on a debtor's allegedly bad faith activities unrelated to plan proposal, because § 1129(a)(3) does not require that a plan "comply with all applicable law." *See Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1035 (9th Cir. 2019); *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002). Juarez's operation and formation of UBLA and the transfers of commissions to Arreola are not relevant to the § 1129(a)(3) inquiry as neither pertains to Juarez's proposal of the Plan.

But, even if this conduct were relevant under § 1129(a)(3), the bankruptcy court's factual findings are not clearly erroneous. As discussed above, the bankruptcy court did not clearly err in finding that UBLA was not formed or

4

operated for an improper purpose and that Arreola earned the transferred commissions. Thus, the bankruptcy court did not abuse its discretion in denying Creditors' objection under § 1129(a)(3).

3. Creditors argue that Juarez's transfers of commissions to Arreola meant that the Plan was unconfirmable under § 1129(a)(15). According to Creditors, this transfer "underscores the fact that [Juarez] has failed to commit all his disposable income to the plan over five years" and "to comply with the statute, [Juarez] would have to contribute the secreted commissions to the plan over five years." But again, this argument fails because the bankruptcy court did not clearly err in finding that these commissions were earned by Arreola and thus were not part of Juarez's disposable income.

4. Creditors contend that the Plan does not comply with 11 U.S.C. § 1129(a)(7), which provides that where a creditor does not accept the Chapter 11 plan, as is the case here, the creditor "will receive or retain under the plan on account of such claim or interest property of a value . . . that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7." 11 U.S.C. § 1129(a)(7)(A)(ii). The bankruptcy court did not err in confirming the plan over Creditors' § 1129(a)(7) objection. Juarez offered evidence that a Chapter 7 liquidation would yield approximately $68,974. After payment of administrative expenses, the federal secured tax lien, and federal and

5

state priority tax liens (totaling about $242,225), there would be nothing left for the class of unsecured creditors, which includes Creditors. In contrast, the Plan offered $33,580.51 to this class, divided between all creditors in the class. Clearly some portion of $33,580.51 is greater than nothing.

Creditors argue, however, that the bankruptcy court abused its discretion by applying the law incorrectly as Juarez's "residence remained property of the estate"—subject to liquidation—and thus, the liquidation would have equaled about $212,974 (i.e., $68,974 plus an additional $144,000 worth of unencumbered equity in the house). But $212,974 is still less than $242,225 (the amount of administrative expenses and liens). Consequently, under Creditors' scenario, the amount that Creditors would receive under Chapter 7 liquidation—still nothing—is less than receiving some portion of $33,580.51 under the Plan. Even under Creditors' theory, § 1129(a)(7) is satisfied.

Creditors also contend that the bankruptcy court erred because it "made no valuation determination at any point in the confirmation process" and denied Creditors "the right to [] a valuation hearing." This argument fails because it misstates the record. Creditors objected to plan confirmation because Juarez "undervalued his assets," and Creditors had an opportunity to contest the valuation of Juarez's non-exempt assets during the evidentiary hearing before the bankruptcy court. During that hearing, Creditors asked Juarez various questions about the

6

value of some of his property, specifically focusing on the value of his boat. The bankruptcy court found that "there was no evidence to controvert the Debtor's statement of value" as to the boat "[o]ther than the fact that the liability coverage on the boat exceeded [its] value." Ultimately, it rejected Creditors' contention that Juarez had undervalued his assets. The bankruptcy court did not err in doing so.

Based on the record, § 1129(a)(7)'s requirements were met. Therefore, the bankruptcy court did not err in overruling Creditors' objection.

5.      Finally, Creditors contend that the bankruptcy court erred in rejecting their objection under § 1129(b). Creditors argue that the Plan did not comply with § 1129(b) because they assert Juarez will retain exempt property without offering reasonably equivalent new value for it in violation of the absolute priority rule embodied in § 1129(b)(2)(B)(ii). *See In re Bonner Mall P'ship*, 2 F.3d 899, 906–09 (9th Cir. 1993), *abrogated on other grounds by Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015).[1]

---

[1] It appears that Creditors also contend that the new value contribution provided for in the Amended Plan does not satisfy the new value corollary as it is less than five percent of the unsecured claims in this case, and thus, is not "substantial." *See Bonner Mall P'ship*, 2 F.3d at 906–09. But Creditors' argument is relegated to a conclusory footnote. "We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) (citation omitted). Therefore, Creditors have waived any argument regarding whether the new value contribution was not substantial. *See id.*

However, § 1129(b)(2)(B)(ii) only prohibits a debtor from receiving or retaining property "on account of" an interest that is junior to claims held by unsecured creditors. *See Bonner Mall P'ship*, 2 F.3d at 908–09; *see also Zachary v. Cal. Bank & Tr.*, 811 F.3d 1191, 1195 (9th Cir. 2016) (recognizing that § 1129(b)(2)(B)(ii) applies to individual debtors). We have stressed that "Congress must have intended the 'on account of' language to have some significant meaning as well as some particular limiting effect," and thus, the phrase "on account of" is critical to the proper application of § 1129(b)(2)(B)(ii)'s absolute priority rule. *Bonner Mall P'ship*, 2 F.3d at 909.

Consequently, § 1129(b)(2)(B)(ii) is not implicated when a debtor retains exempt property as a debtor does not "receive or retain" exempt property "under the plan *on account of* [a] junior claim or interest." 11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis added). Rather, "[i]t is widely accepted that property deemed exempt from a debtor's bankruptcy estate *revests* in the debtor" under 11 U.S.C. § 522. *In re Smith*, 235 F.3d 472, 478 (9th Cir. 2000) (emphasis added) (collecting authorities). In fact, the bankruptcy estate "consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing," but "an interest [is] withdrawn from the estate" where an exemption is allowed. *Owen v. Owen*, 500 U.S. 305, 308 (1991). A debtor therefore obtains exempt property from the bankruptcy estate by virtue of the right to exempt certain property under § 522, not

8

"under the plan on account of [a] junior claim or interest" such that § 1129(b)(2)(B)(ii) is triggered. Accordingly, the bankruptcy court did not err in failing to consider exempt property as part of its analysis under § 1129(b).[2]

**AFFIRMED.**

---

[2] We grant the motion for leave to file a brief as amici curiae filed by National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys, Dkt. 25-1. *See* Fed. R. App. P. 29(a).